O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER S. KARNO, | ) | Case No. EDCV 09-00847-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jennifer S. Karno seeks judicial review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is REVERSED and REMANDED for further proceedings.

**I. Facts and Procedural History**

Plaintiff was born on July 19, 1968. (Administrative Record ("AR") 244.) She has an eighth-grade education. (AR 244.) Plaintiff has not

been gainfully employed since October of 2004, when she left her position as a sales representative at a clothing store because of a panic attack. (AR 244.) Plaintiff's work history also includes employment as a veterinary assistant, cosmetics salesperson, and assembler of sprinkler parts. (AR 90-93.) Plaintiff claims to be disabled due to panic attacks, anxiety, depression, and agoraphobia. (AR 244.) According to Plaintiff, these conditions prevent her from leaving her home unaccompanied. (AR 244.)

Plaintiff filed an application for SSI benefits on September 12, 2005, alleging disability beginning January 1, 2002. (AR 21.) The Commissioner denied Plaintiff's application initially on March 21, 2006, and again upon reconsideration, on December 1, 2006. (AR 48-52, 40-45.) Administrative Law Judge ("ALJ") F. Keith Varni held a hearing on August 28, 2007, at which Plaintiff and her boyfriend, Patrick Carlisi, testified. (AR 238-259.) Plaintiff was not represented by counsel. (AR 240-41.)

The ALJ denied Plaintiff's application on September 12, 2007. (AR 21-27.) The ALJ applied the five-step sequential analysis mandated by the Social Security Regulations[1] in reaching his decision. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application. (AR 23.) The ALJ further found that Plaintiff has a "severe mental impairment from a history of drug and alcohol abuse

---

[1] The ALJ must consider the following questions in evaluating a claimant's disability: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

and from a mood disorder." (AR 23.) After determining that Plaintiff's severe impairment did not meet or equal any listed impairment, the ALJ found that Plaintiff had the residual functional capacity to perform "simple, routine, non-public tasks." (AR 23-24.) The ALJ concluded that Plaintiff was capable of "any unskilled, entry level, object oriented work, such as hotel/motel maid, hospital or industrial cleaner, janitress, dishwasher, assembler, packager, or bundler[,]" and was not disabled as defined by the Social Security Act at any time through the date of the decision. (AR 26-27.)[2] The ALJ declined to employ the testimony of a vocational expert in making this determination.

The Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 6, 2009. (AR 3-5.) Plaintiff then timely filed this action on May 1, 2009. The parties filed a Joint Stipulation on November 19, 2009. Plaintiff alleges that the ALJ erred by: (1) finding Plaintiff's complaints not entirely credible while exhibiting personal bias; (2) acting as his own vocational expert in finding Plaintiff not disabled at step five; and (3) failing to meet his heightened burden to explore all facts in light of Plaintiff's lack of counsel. (Joint Stip. 5.) Plaintiff requests that this Court reverse and remand solely for an award of benefits, or, in the alternative, that the ALJ's decision be reversed and the matter remanded for a new administrative hearing before a different ALJ. (Joint Stip. 30.) Defendant requests that the ALJ decision be affirmed, or if the Court should find for the Plaintiff, that the matter be remanded to the agency for further development. (Joint Stip. 30-31.) Because the Court finds that the ALJ erred in failing to obtain vocational expert testimony, the

---

[2] Because the ALJ found that Plaintiff had no past relevant work, he skipped step four of the analysis pursuant to 20 C.F.R. § 404.1520(g)(1). (AR 26.)

Court will only address that issue.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Social Security Commissioner's decision to deny benefits. The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that "a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. Analysis

Plaintiff contends that the ALJ erred by neglecting to obtain vocational expert testimony on the issue of whether there existed work in the national economy that Plaintiff could perform. (Joint Stip. 18.) Plaintiff further contends that the ALJ's reliance at step five on the Medical-Vocational Guidelines did not suffice. (Joint Stip. 21-22.) The

Court agrees.

Once a claimant has demonstrated the existence of a severe impairment that precludes her from doing past work, the burden shifts to the ALJ to demonstrate that there are a significant number of jobs in the national economy that the claimant can perform despite her impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The ALJ may satisfy this burden by: (1) taking the testimony of a vocational expert; or (2) applying the Medical-Vocational Guidelines at 20 C.F.R., Part 404, Subpart P, Appendix 2 ("grids"). *Id.*

The grids provide a system "for disposing of cases that involve substantially uniform levels of impairment." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring). The grids categorize jobs by three physical-exertional requirements: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). These exertional levels are further divided by a claimant's age, education, and work experience. *Id.* The grids direct a finding of "disabled" or "not disabled" depending on a claimaint's particular combination of factors. *Id.*

There are "strict limits on when the Secretary may rely on the Guidelines." *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring). An ALJ may only substitute the grids for vocational expert testimony when they "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). This means that "a claimant must be able to perform the *full range* of jobs in a given [exertional] category" for the grids to apply. *Tackett*, 180 F.2d at 1101; *see also Burkhart*, 856 F.2d

at 1340. Because "the grids are predicated on a claimaint suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs[,]" they may not account for a claimant's non-exertional limitations. *Lounsberry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). The mere allegation of a nonexertional limitation, however, does not preclude the use of the grids: for the grids to be inadequate, the nonexertional limitation must be "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007)(quoting *Burkhart*, 856 F.2d at 1340); *see also Desrosiers*, 846 F.2d at 577. When "a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities." *Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988).

In the present case, the ALJ found that while Plaintiff had a physical residual functional capacity to perform work "at any exertional level," her mental impairment limited her to "simple, routine, non-public tasks." (AR 23.) The grids do not completely describe these nonexertional limitations, which preclude her from performing the full range of work at any exertional level. As such, it was improper for the ALJ to rely on the grids at step five rather than taking vocational expert testimony. *See, e.g.*, *Holohan*, 246 F.3d at 1201, 1208-09 (ALJ committed legal error by relying on grids where claimaint's only severe impairments were psychiatric); *Tackett*, 180 F.3d at 1103-04 (vocational expert testimony necessary because claimant's need to shift, stand up, or walk around every thirty minutes is significant nonexertional limitation not contemplated by grids); *Polny*, 864 F.2d at 663-64 (grids

inapplicable because although claimaint "capable of performing a wide range of jobs," she could not perform ones that were "highly stressful," "require[d] comprehension of complex instructions," or "require[d] dealing with the public"); *Burkhart*, 856 F.2d at 1341 (grids inapplicable because did not account for claimaint's need to avoid stressful environments, inability to regularly use hands in fine manipulation, or vision problems).[3]

Instead of taking vocational expert testimony, the ALJ identified several jobs that he claimed have been "consistently cited by all vocational experts as applicable to a residual functional capacity which is physically unlimited and with the mental limitations found herein." (AR 26-27.) This was insufficient to meet the ALJ's burden at step five. The ALJ should have had a vocational expert testify as to whether there were jobs in the national economy that Plaintiff could perform in spite of her specific nonexertional limitations. Accordingly, the matter shall be remanded for this purpose.[4]

//
//
//
//
//
//

---

[3] Reliance on the grids may have been appropriate if Plaintiff's nonexertional limitations had been insufficiently severe to limit her range of work, but the ALJ made no such finding in this case.

[4] While the Court declines to reach Plaintiff's other two claims, it assumes that, on remand, the ALJ will reassess the effect of Plaintiff's mental impairments on her ability to work and conduct a new credibility determination.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.[5]

DATED: January 5, 2010

MARC L. GOLDMAN
_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[5] Plaintiff urges the Court to remand this matter for a new decision by a different ALJ, citing the ALJ's personal bias. (Joint Stip. 8-9, 30.) According to Plaintiff, the ALJ's adverse credibility determination coupled with his comment that Plaintiff's work history did not evidence a desire to work, demonstrated impermissible bias. (Joint Stip. 8-9.) We presume that ALJs are unbiased. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). This presumption may only be rebutted "'by a showing of conflict of interest or some other specific reason for disqualification.'" *Id.* (quoting *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)). "'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display'" are insufficient to establish bias. *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). An AlJ's behavior must be "'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 551). Because Plaintiff has not identified conduct rising to this level, remand before a different ALJ is unwarranted. *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (ALJ's "expressions of disbelief" regarding plaintiff's claims did not constitute bias).